THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROMEO JACKSON (B43511), | ) |
| *Plaintiff*, | ) |
| | ) No. 22 C 1297 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| WEXFORD HEALTH SOURCES, INC.; DAVID GOMEZ; KENNETH OSBORNE; LUCESITA GALINDO; and LILYBETH SEGARRA, | ) |
| *Defendants.* | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Romeo Jackson alleges that Defendants' failure to provide him with prescribed medications in a timely manner violates his constitutional rights under the Eighth Amendment. Jackson brought suit against Wexford Health Sources, Inc. ("Wexford") and David Gomez, Kenneth Osborne, Lucesita Galindo, and Lilybeth Segarra in their individual capacities (collectively, "IDOC Defendants") under 42 U.S.C. § 1983 and alleges this conduct constitutes deliberate indifference to his serious medical needs. (Dkt. 33 ¶ 1). Defendant Wexford moves to dismiss Count VI, (Dkt. 52), and Defendants Osborne and Galindo move to dismiss Counts II and III, (Dkt. 58). For the following reasons, Wexford's Motion to Dismiss Count VI [52] is granted and Osborne and Galindo's Motion to Dismiss Counts II and III [58] is granted in part and denied in part.

1

## BACKGROUND

Romeo Jackson is an inmate at Stateville Correctional Center ("Stateville") and in the custody of the Illinois Department of Corrections ("IDOC"). (Dkt. 33 ¶ 1). Kenneth Osborne was the Assistant Warden of Programs and Lucesita Galindo was the Health Care Unit administrator at Stateville during the relevant time period. (*Id.* at ¶¶ 4–5). Osborne "oversaw the operations at Stateville, including its healthcare services," while Galindo "supervised and oversaw the operations of the Health Care Unit and pharmacy" at Stateville. (*Id.* at ¶¶ 71, 75, 77). Wexford is a corporation that contracts with IDOC to provide healthcare services to inmates, including at Stateville. (*Id.* at ¶ 7). The core of Jackson's complaint is that since Wexford bears the initial costs of on-site healthcare services, they have "a strong incentive to implement cost-cutting policies," such as discouraging medical staff "from ordering certain medications . . . due to cost," resulting in prescription delays for inmates. (*Id.* at ¶¶ 17, 20).

Jackson's various medical conditions require him to take at least four prescription medications to manage and treat his symptoms. These prescriptions include Protonix and Reglan to treat Gastroesophageal Reflux Disease ("GERD"); aspirin and Hydrochlorothiazide to manage and treat heart disease and hypertension; and Elavil and Protonix to treat chronic rhinitis. (*Id.* at ¶¶ 23–25). Though Jackson should take these medications at least once or twice per day, he alleges Defendants denied him:

- Protonix between March 16–19, 2019, August 12–16, 2021, September 28–29, 2021, and October 23–27, 2021 (*Id.* at ¶¶ 33, 45, 48, 51);
- Reglan between January 23–29, 2020, February 11–15, 2021, October 23–27, 2021, and August 5–9, 2022 (*Id.* at ¶¶ 37, 41, 51, 56); and
- Hydrochlorothiazide and aspirin between April 21–29, 2020 (*Id.* ¶ 39).

2

During Jackson's gaps in taking Protonix and Reglan, he experienced "discomfort and distress," including "a near constant state of feeling that he was being choked," inability "to breathe," and "coughing up blood," among other symptoms. (*Id.* at ¶¶ 33, 37, 45). Jackson required a few days "to feel normal again" once restarting his prescriptions. (*Id.* at ¶ 60).

After each period without his prescriptions, Jackson alleges he filed grievances and raised complaints with IDOC. For example, he states he filed grievances on January 26, 2020, April 28, 2020, February 14, 2021, August 17, 2021, and September 28, 2021. (*Id.* at ¶¶ 38, 40, 41, 46, 49). In response to those grievances, Jackson pleads that IDOC officials communicated with the warden of Stateville, David Gomez, about shortcomings with fulfilling prescriptions throughout the relevant time period. After reviewing Jackson's grievances, IDOC concluded that "medication concerns did occur." (*Id.* at ¶ 52). For example, "IDOC officials directed the warden [Gomez] to advise whether [Jackson] experienced any effects from not receiving medication," to "look into the re-ordering process . . .[,] and to take any corrective action as needed." (*Id.* at ¶¶ 36, 44). Jackson also wrote letters to Gomez, IDOC Director Rob Jeffreys, and the Office of the Governor of Illinois. (*Id.* at ¶ 46). With respect to Osborne and Galindo, Jackson alleges that he "spoke to . . . Galindo and Osborne to plead for help," and "spoke directly" to Galindo in October 2021 about IDOC's directives to refill his prescriptions on time. (*Id.* at ¶¶ 47, 50).

Jackson brings claims under 42 U.S.C. § 1983 for (1) deliberate indifference against individuals David Gomez, Kenneth Osborne, Lucesita Galindo, and Lilybeth Segarra; and (2) deliberate indifference and respondeat superior against corporate Defendant Wexford Health Services, Inc. Now Wexford and Defendants Osborne and Galindo move to dismiss Counts II, III, and VI.

3

**LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and "draw[s] all reasonable inferences in the [plaintiff's] favor." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, to survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

**I.  Deliberate Indifference Against Defendants Osborne and Galindo—Counts II and III**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661–62 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate-indifference claim, the plaintiff must prove that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Jackson states that his serious medical condition is GERD, heart disease, pulmonary hypertension, and chronic rhinitis. (Dkt. 33 at ¶¶ 22–26). The Defendants do not challenge whether these are objectively serious medical conditions. Thus, the Court will address Defendants' arguments on the second prong of deliberate indifference.

4

Osborne and Galindo have supervisory roles as non-medical officials of Stateville. (*See* Dkt. 52 at 2). A plaintiff must allege that each prison official defendant has been deliberately indifferent to that plaintiff's objectively serious medical condition. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). A prison official is deliberately indifferent when they, "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A delay in treatment may constitute deliberate indifference. *See, e.g.*, *Estelle*, 429 U.S. at 104–05; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). But, under Section 1983, these officials are only liable for his or her own misconduct. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). For a supervisor to be liable for the allegedly wrongful conduct of others, he must both (1) "know about the conduct" and (2) facilitate, approve, condone, or turn a blind eye toward it. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022).

Taking the allegations against Osborne first, Jackson's threadbare facts do not provide evidence that Osborne actually knew of and disregarded a substantial risk of harm. Jackson provides no facts to show that Osborne was personally involved in or knew of Jackson's lapses in prescriptions. Jackson only alleges that he "spoke" to Osborne—without detailing any substance—on an unknown date. (Dkt. 33 at ¶ 47). At best, this shows Osborne *may* have personal knowledge of Jackson's difficulties in receiving his prescriptions. But there is no sign that Osborne acted or failed to act with deliberate indifference based on this knowledge. Jackson claims he filed at least five grievances with IDOC. Though a prisoner request for relief that falls on "deaf ears" may show deliberate indifference, *Perez*, 792 F.3d at 782, Jackson does not plead any facts to imply that Osborne received, reviewed, and failed to act on any of these grievances. Instead, Jackson repeatedly states that Gomez, not Osborne, was on notice from IDOC and the Governor's office

5

regarding problems with prescriptions. Osborne can only be held liable for his own knowledge and actions, none of which Jackson alleges. The Court thus grants the motion to dismiss Count II as to Osborne.

Galindo, however, does not suffer a similar fate. Jackson alleges he spoke directly with Galindo in October 2021 about the Governor's Office email to IDOC to "make sure that medical staff will refill [Jackson's] medications." (Dkt. 33 at ¶ 50). In overseeing the Health Care Unit operation, Galindo "was aware of Wexford's policies for ordering and distribution of medications for inmates," but "ignored [Jackson's] requests and failed to adequately address the delays." (*Id.* at ¶¶ 77–78). Directly after their communication, Jackson was denied Protonix and Reglan again, and the delays continued throughout the following year. Drawing all possible inferences in Jackson's favor, Jackson's extensive pleading of IDOC's notice of the prescription delays and grievances filed possibly indicate his request fell on Galindo's "deaf ears," *Perez*, 792 F.3d at 782; *see also Riley El v. Gomez*, No. 19 CV 2002, 2023 WL 3169512, at * 10 (N.D. Ill. Apr. 28, 2023) ("[W]hen a prison official continuously ignores or denies numerous detailed letters and grievances regarding a constitutional deprivation . . . he may become personally liable for that deprivation."). Galindo's role as Health Care Unit administrator goes to the heart of Jackon's claims that he was systematically denied his prescriptions—especially in light of his repeated grievances and interventions from both IDOC and the Governor's Office—and sufficiently creates an inference of personal involvement. At this stage, the motion to dismiss is granted as to Osborne and denied as to Galindo.

### II. Respondeat Superior Against Wexford – Count VI

Existing law in this circuit prohibits a theory of respondeat superior liability for private corporations under Section 1983. *Shield v. Ill. Dept. Corr.*, 746 F.3d 782 (7th Cir. 2014); *Iskander v. Vill. of Forest Park*, 690 F.3d 126 (7th Cir. 1982). Jackson pleads in Count VI that Wexford "through its agents, apparent agents, and/or employees" displayed deliberate indifference under Section 1983. Yet, Jackson acknowledges the existing law that this Court is bound to follow and seeks to "preserve this claim in the event" *Iskander* is overruled. (Dkt. 33 at 16 n.1). Thus, there is no dispute the Court is compelled under existing law to grant Wexford's Motion to Dismiss Count VI. *See, e.g.*, *Peterson v. Wexford Health Sources, Inc.*, 986 F. 3d 746, 754 (7th Cir. 2021) (upholding *Iskander*); *Howell*, 987 F.3d at 647 (declining to upset circuit precedent that private corporations cannot be held liable under a theory of respondeat superior liability); *Curry v. Butler*, No. 22-2608, 2023 WL 2981445, at *3 (7th Cir. Apr. 18, 2023) ("But dismissal here was appropriate because respondeat superior liability does not attach in § 1983 cases to private corporations like Wexford.").

### III. Group Pleading

Lastly, Osborne and Galindo argue that Jackson impermissibly engaged in "group pleading" that fails to provide individual Defendants with notice of their alleged violations of his rights. Group pleading alone is not grounds for dismissal of Section 1983 cases, especially where defendants allegedly acted in combination, the complained of actions apply to all of them, or they have notice of the alleged violation in which they participated. *See, e.g.*, *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Jackson pleads that the actions and inactions of Wexford and the individual defendants made it so that he was repeatedly denied access to his prescription medications and suffered needlessly as a result. At this

stage, Defendants have sufficient notice of which policies it is accused of promulgating, maintaining, and failing to address. Especially in light of the particularly in which Jackson pleads each individual defendant's counts, Jackson's use of group pleading in places throughout his complaint is not a reason to dismiss the complaint.

## CONCLUSION

For these reasons, the Court dismisses Counts II and VI. The Court grants Defendants Wexford's motion to dismiss Count VI [52] and grants in part and denies in part Defendants Osborne and Galindo's motion to dismiss Counts II and III [58].

_____
Virginia M. Kendall
United States District Judge

Date: January 16, 2024